UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

|   |   |
|---|---|
| CHARLES KETTLES, | Case No. 1:09-cv-230 |
| Plaintiff, | HONORABLE PAUL L. MALONEY |
| v. | |
| RENT-WAY, INC., d/b/a Rent-A-Center, a corporation,[1] | |
| and JASON HUTCHINSON, an individual, and CHRIS WAGNER, an individual, | |
| Defendants. | |

---

**OPINION and ORDER**

**Granting the Defendants' Motion to Compel Arbitration;
Dismissing the Complaint;
Terminating and Closing the Case**

Fifty-eight year-old Charles Kettles ("Kettles") brings this action against Rent-Way, Inc.

d/b/a Rent-a-Center, Inc. ("RentWay") and two of its employees under the Americans with

---

[1]

The defendants maintain that Plaintiff's employer at the time of his termination was Rent-a-Center East, Inc.  Rent-a-Center purchased RentWay effective November 1, 2006, and Plaintiff became a Rent-a-Center employee at that time.  Thus, Plaintiff has sued the wrong corporate defendant.  The arbitration agreement covers both entities and the proper defendant can be sorted out if, and when, Plaintiff files a proper arbitration demand.

MTD at 1 n.1.  The court intimates no position on this issue.  The court holds only that the claims asserted in Kettles' complaint are subject to mandatory binding arbitration under the terms of his employment contract with his employer during the relevant period, whether Rent-Way, Inc. and/or Rent-a-Center East, Inc.

Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA").  Invoking the court's supplemental jurisdiction, 28 U.S.C. § 1367, Kettles also asserts claims of disability discrimination, age discrimination, and retaliatory discharge under Michigan statute and common law.  RentWay and the two individual defendants have jointly moved to compel arbitration and consequently dismiss the complaint.  For the reasons that follow, the court will grant the defendants' motion.

**BACKGROUND**

Kettles Signs and Submits the Employee Guidebook Acknowledgement.

Kettles was born in June 1951.  Beginning in November 1988, at age 37, Kettles worked for defendant RentWay or its predecessor, mostly as a store manager.  *See* Complaint filed in Kalamazoo Cty. Cir. Ct. on Feb. 6, 2009 ("Comp") ¶ 7-8.

The parties agree that in February 2005, Kettles signed a form acknowledging that he had received a copy of the RentWay Employee Guidebook ("the guidebook").  MTD Ex 1 (Spratt Aff) ¶ 4 and P's Opp at 2.  The parties also agree that the Employee Guidebook Acknowledgement ("the guidebook acknowledgement") signed by Kettles recited that RentWay had the right to change its policies and procedures at any time, and that it was the employee's responsibility to remain current with such changes.  MTD Ex 1 (Spratt Aff) ¶ 4 and Att B, and P's Opp at 2.  In its entirety, the section entitled "Employee Guidebook Acknowledgement" provided as follows:

- I have received a copy of the RentWay Employee Guidebook, and *I understand that it is my responsibility to read and comply with the policies that are summarized in this Guidebook and any revisions to it.*  I understand that RentWay publishes the full text of, as well as additional policies, in its

Online Policies and Procedures Manual and through electronic communications on RentWay's Intranet, eOffice, which I must comply with as well. *I further understand that RentWay has the right to change its policies and procedures at any time, and that it is my responsibility to remain current with such changes.*

- I understand that my employment with RentWay is at-will; that is, my employment may be terminated with or without cause and with or without notice at any time by RentWay or me. *Nothing in this Guidebook or other manuals, documents or statements published by RentWay creates an employment contract* or limits RentWay's right to terminate my employment-at-will. Except as provided below, RentWay does not enter into any written or oral contracts or agreements guaranteeing employment, compensation, or any particular job duties, for any period of time with any employee. This is a complete understanding regarding my employment at-will. This understanding supercedes any other understanding, statement or agreement and cannot be modified, except in a writing signed by RentWay's President or Chief Executive Officer.

- I have received and reviewed a copy of my job description.

- I understand that RentWay possesses all rights, title and interest to any programs, systems, improvements, procedures and copyrightable matter I conceive or develop for use by RentWay during my employment.

- Except in connection with my job duties, I will not disclose to anyone or make any use of RentWay's trade secrets, proprietary or confidential information which I acquire during my employment with RentWay.

- I understand and consent to RentWay's "mystery shopping" program, including, but not limited to, the use of concealed audio or video recording devices by RentWay or an independent consulting firm hired by RentWay and to the use of the recordings to evaluate my performance.

- I understand that I may direct any questions I have to RentWay's Human Resources Department. I also understand that the Company is specifically requesting that I report any illegal or improper acts that violate any laws or policies to either my Supervisor, my Regional Human Resources Manager, the Corporate Human Resources Director or by calling the InTouch Employee Hotline at 1-877-MY INPUT (1-877-694-6788) and using RentWay's ID Code - RENT (7368), or visiting www.getintouch.com and using RentWay's ID Code - RENT (7368).

After signing this page, mail it to Rent-Way, Inc., One RentWay Place, Erie, PA

-3-

16505, Attention: Corporate Human Resources Director.

MTD Ex 1 Att B at 43-44 (emphasis added).  The Employee Guidebook / Employee Guidebook

Acknowledgement concluded with an outlined box containing this capitalized, boldfaced text:

> *NEITHER THE EMPLOYEE GUIDEBOOK NOR THIS ACKNOWLEDGEMENT CONSTITUTES A CONTRACT OF EMPLOYMENT* FOR ANY PERIOD OF TIME BUT RATHER SETS FORTH FOR EMPLOYEES AS A GENERAL REFERENCE THE GENERAL GUIDELINES IN EFFECT ON THE DATE IT WAS ISSUED.
>
> EMPLOYMENT AT RENTWAY IS AT-WILL; THAT IS, YOUR EMPLOYMENT MAY BE TERMINATED WITH OR WITHOUT CAUSE AND WITH OR WITHOUT NOTICE AT ANY TIME BY EITHER YOU OR RENTWAY.  ONLY RENTWAY'S [CEO] CAN ENTER INTO WRITTEN OR ORAL CONTRACTS GUARANTEEING EMPLOYMENT, COMPENSATION, OR ANY PARTICULAR JOB DUTIES, FOR ANY PERIOD OF TIME WITH ANY EMPLOYEE. NOTHING IN THIS GUIDEBOOK OR ANY OTHER MANUAL, DOCUMENT OR STATEMENT SHALL LIMIT THE RIGHT TO TERMINATE EMPLOYMENT AT-WILL.
>
> THIS IS A FULLY INTEGRATED UNDERSTANDING REGARDING EMPLOYMENT, COMPENSATION, JOB DUTIES, OR TERMINATION OF EMPLOYMENT.  THIS UNDERSTANDING SUPERCEDES ANY OTHER UNDERSTANDING, STATEMENT OR AGREEMENT, WHETHER WRITTEN OR VERBAL, AND CANNOT BE MODIFIED, EXCEPT IN A WRITING SIGNED BY RENTWAY'S [CEO].

MTD Ex 1 Att B at 44 (paragraph breaks added, emphasis added) (boldface omitted).

<u>RentWay Communicates the New Arbitration Agreement to Store Managers and Employees</u>

In November 2006, when Kettles was 56, RentWay – a company that rents merchandise such

as appliances, furniture, and electronics – bought the store at which he worked.  According to

RentWay's uncontested account, on September 15, 2005 it sent a letter to each employee's home

which provided a copy of the mandatory binding-arbitration agreement and advised that it would

take effect on October 1, 2005.  *See* MTD Ex 1 (Declaration of Steven A. Spratt, Director of

Benefits and Compensation and Custodian of Records for Def. RentWay, filed Mar. 18, 2009

("Spratt Aff")) ¶ 6.  In its entirety, the September 15, 2005 letter of RentWay's William S. Short

read as follows:

> RE:    IMPORTANT INFORMATION ABOUT AN ALTERNATIVE
>          DISPUTE RESOLUTION PROGRAM
>
> Dear RentWay employee:
>
> Over the past year, RentWay has been looking at the practices of other companies regarding the most effective and efficient methods for resolving conflicts in the workplace.  We looked at successful programs at other companies, sought advice from experts, and considered concerns expressed by our own people from all across the company.
>
> The product of this effort is a new conflict resolution program called Solutions.  Just as we have a medical plan to help you if you get sick and a workers' compensation plan if you get injured on the job, we now have a program for meeting another need: resolving workplace disputes in a timely, constructive way.
>
> Solutions provides a range of methods for resolving workplace conflicts – from minor everyday misunderstandings to violations of legally protected rights. Solutions is designed to benefit every level of employee – from field positions to corporate management.  The program is part of our continuing effort to create a workplace environment where all our employees feel Welcome, Wanted, and Important.
>
> *Solutions takes effect on October 1, 2005.  As of that date, work-related conflicts at RentWay will be addressed and resolved exclusively through Solutions.  Conflicts that are not resolved through other methods in the Solutions process will be ultimately decided through binding arbitration.  By accepting or continuing employment at RentWay after October 1, 2005, you indicate your agreement to abide by the Solutions process.*
>
> Solutions provides opportunities for early, effective, and fair resolution of workplace problems in a manner that is generally faster and less expensive than the litigation process.
>
> Please take the time to read the enclosed booklet carefully.  It describes Solutions and how it works.  If you have any questions about the program, contact the Human Resources Department.
>
> I am committed to this new program because it offers timely, fair and affordable alternatives for resolving workplace disputes.  I am confident that Solutions will

make our company an even better place to work.

MTD Ex 1, Att C (emphasis added).

RentWay further alleges, without contradiction from Kettles, that on September 28, 2005, RentWay sent a memorandum to every store manager, including Kettles, enclosing a copy of the arbitration agreement, asking all store managers to confirm that every employee received a copy of the agreement in the mail and to provide a copy to anyone who said he had not. *See* MTD Ex 1 (Spratt Aff) ¶ 7. In its entirety, RentWay's September 28, 2005 memorandum to Kettles and the other store managers read as follows:

> SUBJECT:    Solutions: An Alternative Dispute Resolution Program for RentWay, Its Employees, and Its Job Applicants
>
> By now, you and every other employee in your store should have received a copy of the Solutions booklet in the mail. I am now enclosing a copy of the Solutions booklet for you to keep on hand at your store in the event that you or other employees in the store wish to review it. Of course, employees may also view and print the Solutions booklet on eOffice.
>
> In addition, it is important that you check with each employee in the store to make sure every employee received a copy of the Solutions booklet in the mail. If an employee indicates that he or she did not receive a copy of the booklet, make a copy of the enclosed booklet or print a copy from eOffice and give it to the employee.
>
> If you have any questions about Solutions, contact the Human Resources representative below. [listing HR Manager's name and telephone number for each of company's divisions]

MTD Ex 1, Att D.

Feb-Aug 2007:  Kettles is Injured, Has Surgery, and Returns to Work

In February 2007, still age 56, Kettles suffered a "serious" back injury, and he had back surgery in March 2007. Comp ¶¶ 11-12. Kettles filed a workers-compensation claim related to this

injury, and took leave which he characterizes as FMLA leave.  Comp ¶¶ 13-14.

Kettles alleges that when he returned to work in August 2007, his supervisor, Jason Hutchinson, made derogatory statements regarding his age.  For example, Hutchinson allegedly said that  given Kettles' age, he was presumably unable to adapt to the new company's policies; he should have replaced an older store manager with "a younger guy" a long time ago; he was surprised Kettles was still in the business at his age; and older store managers can "easily" be replaced with younger ones.  Comp ¶¶ 15-16.  Kettles also alleges that Hutchinson and colleague Chris Wagner, who were friends, "constantly" joked about "older people," Comp ¶ 17, and he alleges that RentWay "had been replacing older store managers . . . with much younger ones before they terminated" him, Comp ¶ 18.


### Jan. 2008:  Kettles Sustains a Second Injury and RentWay Fires Him Two Weeks Later

In mid-January 2008, Kettles "slightly" injured his back at work and told supervisor Hutchinson about the injury.  Two weeks later, on February 1, 2008, Rent-Way fired Kettles, citing his alleged violation of company policy regarding merchandise.  Comp ¶¶ 19-20.  (RentWay adds the allegation that Kettles lied "to his supervisor in the course of the investigation regarding the policy violation."  *See* Brief in Support of Motion to Compel Arbitration and to Dismiss the Complaint, filed by the Defendants on Mar. 23, 2009 ("MTD") at 1.)  Kettles charges that other managers and employees, who were younger and not disabled, had violated the same policy without being fired.  Comp ¶ 21.  Finally, Kettles alleges that Rent-Way replaced him with a younger man, who himself was later replaced by a "substantially younger" person after he returned to work following hip surgery.  Comp ¶¶ 23-24.

**PROCEDURAL HISTORY**

Kettles filed this complaint in the Circuit Court for Kalamazoo County, Michigan on February 5, 2009.  *See* Notice of Removal filed by Defendant Rent-Way, Inc. d/b/a Rent-a-Center, Inc. on April 16, 2009 ("Removal Notice") ¶ 1.  He served the complaint and summons on RentWay on February 23, 2009 and on Hutchinson and Wagner on March 2, 2009.  *See* Notice ¶ 2 and Exs. A - C (summonses).  On March 16, 2009 all three defendants, represented by the same counsel, jointly filed a notice removing the case to this court.  On March 23, 2009, RentWay moved to dismiss this action and compel Kettles to submit his claims to contractual binding arbitration instead. Plaintiff Kettles timely filed an opposition brief in April 2009, and  RentWay timely filed a reply brief on Thursday, May 7, 2009.

**DISCUSSION**

The Parties' Arguments.

RentWay contends that this dispute is covered by a mandatory-arbitration agreement which the company sent to Kettles on September 15, 2005, with an effective date of October 1, 2005. RentWay relies on the passage stating:

> Beginning October 1, 2005 . . . accepting or continuing employment . . . will indicate your consent and agreement to resolve work-related disputes (other than the exceptions expressly stated in this booklet) exclusively through Solutions [RentWay's alternative dispute resolution and arbitration program].  *This includes the requirement that any legal dispute between you and RentWay be resolved by final and binding arbitration rather than litigation.  This means you will not have a right to bring a lawsuit regarding such work-related disputes.*

MTD, Ex. 1, Att. A at 2 (emphasis added).  RentWay contends that Kettles' continuing employment after the effective date of the arbitration agreement constitutes consent to that agreement under

Michigan law, MTD at 6-7; that Kettles' claims are within the scope of the broadly worded agreement, MTD at 8; and that no federal policy or statute renders these claims non-arbitrable, MTD at 8-9.

Kettles responds that he is not bound by an arbitration agreement which he never signed and which was issued years after he was hired. *See* Plaintiff Kettles's Brief in Opposition to Motion to Compel Arbitration and to Dismiss ("P's Opp") at 1. Kettles acknowledges RentWay's argument that it could create the arbitration provision *after* he started work and bind him to it because "the original agreement" (by which Kettles means the employee handbook he signed when he started work in 1988) expressly reserved RentWay's right to unilaterally modify the terms of employment.

Kettles counters with *Heurtebise v. Reliable Business Computers*, 550 N.W.2d 243 (Mich. 1996), *cert. den.*, 520 U.S. 1142 (1997). Kettles takes *Heurtebise* to stand for the proposition that "an agreement to arbitrate is unenforceable where an employer retains the right to unilaterally modify the contract," P's Opp at 1, just as the Employee Guidebook expressly reserved RentWay's right to unilaterally modify any terms it wished, P's Opp at 4-7. Kettles correctly distinguishes *Seawright v. AGFS, Inc.*, 507 F.3d 967 (6th Cir. 2005), cited by MTD at 6 n.5, on the ground that it applied *Tennessee* rather than Michigan law. P's Opp at 1.

Ultimately, however, RentWay decisively distinguishes *Heurtebise*. RentWay concedes that the language in its Guidebook and Guidebook Acknowledgement closely tracks the language in *Heurtebise*. Accordingly, RentWay does not deny that those two documents did not evince RentWay's intent to be bound by their terms, and thus did not create a valid agreement to arbitrate. RentWay notes, however, that it also issued a separate document, which did not contain the offending language, which obligates Kettles to submit these claims to its "Solutions" ADR / binding-

-9-

arbitration program.  In contrast to the employee handbook and acknowledgement form in both this case and *Heurtebise*, RentWay's "Solutions" document repeatedly and clearly states that it is intended to create a contract that binds both parties and is not subject to unilateral change.

> The Federal Arbitration Act Represents a Strong Policy Favoring Arbitration, But State Contract Law Governs Formation and Enforceability of Alleged Agreement to Arbitrate

The United States Supreme Court very recently clarified the operation of the FAA.  In the process, it reaffirmed and strengthened the central role of state law in federal actions to enforce and construe arbitration clauses.  Writing for the majority, Justice Scalia explained as follows:

> Section 2 – the FAA's substantive mandate – makes written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract."  That provision creates substantive federal law regarding the enforceability of arbitration agreements, requiring courts "to place such agreements on the same footing as other contracts."  *Volt [Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.]*, 489 U.S. 468, 478 . . . (1989) . . .
>
> Section 3, in turn, allows litigants already in federal court to invoke agreements made enforceable by § 2.  That provision requires the court, "on application of one of the parties", to stay the action if it involves 'an issue referable to arbitration under an agreement in writing."  9 U.S.C. § 3.
>
> Neither provision purports to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them). Indeed, § 2 explicitly retains an external body of law governing revocation (such grounds "as exist at law or in equity").  And we think § 3 adds no substantive restriction to § 2's enforceability mandate.

*Arthur Andersen LLP v. Carlisle*, – U.S. –, –, – S.Ct. –, 2009 WL 1174853, *4 (U.S. May 4, 2009) (Scalia, J., joined by Kennedy, Thomas, Ginsburg, Breyer, and Alito, JJ.) (emphasis added, ¶ break added, nn. 4 & 5 omitted); *see generally Hall St. Assocs., LLC v. Mattel, Inc.*, – U.S. –, – n.3, 128 S.Ct. 1396, 1402 n.3 (2008) (Souter, J., joined by Roberts, C. J., & JJ. Scalia, Thomas, Ginsburg, and Alito, JJ.) (referring to parties' ability to amend their pleadings "to raise an independent *state-*

*law contract claim or defense* specific to the arbitration agreement") (emphasis added).

 Accordingly, in *Arthur Andersen*, Justice Scalia held for the majority that

> *"state law", therefore, is applicable to determine which contracts are binding under § 2 and enforceable under § 3 "if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.* * * *

*Arthur Andersen*, – U.S. at –, – S.Ct. at –, 2009 WL 1174853 at *4 (emphasis added) (citing *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987) & *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Among other contract-law issues, "state law 'governs generally applicable contract defense [against an arbitration clause], such as fraud, duress, or unconscionability.'" *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

 **In other words, this court must apply Michigan state law when making any of these three determinations**: (1) whether the Kettles/RentWay alleged agreement to arbitrate was validly formed; (2) if so, whether Kettles has any defenses to the enforcement of the agreement, such as unenforceability due to public policy or unenforceability by RentWay as a non-signatory to the agreement (as putative successor-in-interest to the affiliated company which issued the Guidebook, Guidebook Acknowledgement, and "Solutions" document to Kettles). *See Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC*, – F. App'x –, –, 2009 WL 383680, *1 (6th Cir. Feb. 17, 2009) (Suhrheinrich, Griffin, <u>Kethledge</u>) ("'In deciding whether [arbitration] agreements are enforceable, we examine applicable state-law contract principles.'") (quoting *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 314 (6th Cir. 2000)).[2]

---

[2]

 *See, e.g., Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 648 (6th Cir. 2008) (in action to enforce arbitration agreement under 9 U.S.C. § 3, Circuit applied Michigan law to determine whether agreement applied retroactively);

*Formation* of an Agreement to Arbitrate under Michigan Law

In *Heurtebise v. Reliable Business Computers*, 550 N.W.2d 243 (Mich. 1996), the plaintiff brought suit under Michigan's Elliott-Larsen Civil Rights Act ("MELCRA"), MICH. COMP. LAWS § 37.2101 *et seq.*, alleging that Reliable Business Computers ("RBC") committed illegal sex discrimination by terminating her, but not her male co-worker, for the same conduct.  She sought monetary damages.  *Heurtebise*, 550 N.W.2d at 245.  Defendant-employer RBC moved to compel arbitration and dismiss the complaint, relying on a written acknowledgement that the plaintiff had received the employee handbook and agreed to be bound by its terms and policies.  *Id.* at 245.  The RBC Employee Handbook Acknowledgement stated, in full:

> I acknowledge receipt of the Reliable Business Computers, Inc. Employee Handbook.  I agree to conform to the various procedures, rules and regulations of the company, as set forth therein, and as may be promulgated by the company in the future, and further understand that my employment and compensation can be terminated with, or without cause, and with or without notice at any time, at the option of either me or the company.  I further understand that no employee, other than the president or his designee, in a duly executed written document, has any authority to enter into any agreement for employment for any specified period of time, or to make any arrangements contrary to or different from what is provided in this handbook.

*Heurtebise*, 550 N.W.2d at 245 n.2.  The RBC Employee Handbook provided an internal-review mechanism for disputes involving potential dismissal:

> Notwithstanding that employees are employed by the COMPANY "at will" and that an employee's employment may be terminated by the employee or the COMPANY, at any time, (without notice and without cause) [sic, sentence fragment].   An employee who has followed the internal review procedure for review by the Executive Committee, (specified above), and who is not satisfied with the results of the review and who feels compelled to seek redress from a source outside the

---

*Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294 (6th Cir. 2008) (applying Michigan law to determine whether party had the right to revoke or rescind the arbitration agreement, and whether it could establish fraud in the inducement);

COMPANY[,] may challenge the propriety of the dismissal outside the COMPANY, only through arbitration as hereinafter described.

*Heurtebise*, 550 N.W.2d at 245 n.2. In turn, the RBC arbitration provision stated, in its entirety:

ARBITRATION OF DISPUTES

If any dispute, matter or controversy involving claims of monetary damages and/or employment related matters should arise between an employee and the COMPANY, including, but not limited to, any and all claims relating to termination of employment, (regardless of whether or not the employee has exhausted the various mandatory procedures for internal review of complaints and dismissals), then such dispute, matter or controversy shall be referred for binding arbitration under the laws of the State of Michigan to the American Arbitration Association (hereinafter "AAA") under the rules of such AAA, to be decided by a three (3) member arbitration panel, except that the COMPANY shall have the right to select one arbitrator, the employee shall have the right to select one arbitrator, and the two arbitrators so selected shall select a third arbitrator.

A decision or award of the AAA shall be accepted as final and conclusive and shall be binding upon both the COMPANY and the employee with opportunities to present and rebut evidence relative to the applicable issues. Nothing herein relative to arbitration, however, shall prevent either employee or COMPANY from seeking and obtaining equitable relief on a temporary or permanent basis from a court of competent jurisdiction by instituting a legal action or other court proceeding to protect or enforce the rights of either or to prevent irreparable harm or injury. However, the court's jurisdiction over any such matter between the COMPANY and the employee shall be expressly limited only to the equitable issues and relief sought, and all issues involving monetary damages between the COMPANY and the employee shall be determined through arbitration as described above.

*Heurtebise*, 550 N.W.2d at 245 n.3.

The Michigan Supreme Court ultimately held that RBC's motion to compel arbitration should be denied. The Court began by noting that "an arbitration provision is unenforceable if it is not a binding contract." *Heurtebise*, 550 N.W.2d at 247 & n.8 (citing 4 AM. JUR.2d, Alternative Dispute Resolution § 70 at 129-30, MICH. COMP. LAWS § 600.5001(2), and M.S.A. § 27A.5001(2)). Applying that principle, the Court first pointed to the handbook's opening statement, which read:

This document is intended to establish and clarify certain employment policies,

-13-

practices, rules and regulations (. . . "Policies") of [RBC] (. . . "company").  Except as may otherwise be provided, the Policies will apply to all company employees, and it is each employee's responsibility to assure [sic] that his/her own conduct is in conformity with those Policies.  *It is important to recognize and clarify that the Policies specified herein do not create any employment or personal contract, express or implied,* nor is intended nor [sic] expected that the information provided in this document will provide sufficient detail to answer any and all questions which may arise.

NOTWITHSTANDING ANY OF THE SPECIFIC POLICIES HEREIN, EACH EMPLOYEE HAS THE ABSOLUTE RIGHT TO TERMINATE HIS/HER OWN EMPLOYMENT AT ANY TIME, WITHOUT NOTICE, AND FOR ANY REASON WHATSOEVER, AND THE COMPANY HAS THE SAME RIGHT.

From time to time, the company specifically reserves the right [to modify], and may make modifications to any or all of the Policies herein, at its sole discretion, and as future conditions may warrant.  In the event employees have any questions relative to any of the Policies, they are urged to contact their supervisor for clarification purposes.

* * *

New employees will receive a copy of this document at the time of formal hire.  Upon receipt, all employees will sign the Employee Acknowledgement, acknowledging receipt of this document.

*Heurtebise*, 550 N.W.2d at 247 (capitals in handbook, italics added by Michigan S.Ct.).  Without

further analysis, the Court promptly concluded that "this demonstrates that the defendant [employer]

did not intend to be bound to any provision contained in the handbook.  Consequently, we hold that

the handbook has not created an enforceable[3] arbitration agreement with respect to this dispute."

*Id.*

Although the lead opinion for the Court spoke, in full, for only three Justices, the Court was

unanimous on this score.  Writing for the other four members of the Court, Justice Boyle issued a

---

[3]

What the Court meant was that the handbook had not created a valid arbitration agreement in the first place.  Technically, saying that the handbook had not created an "enforceable" agreement leaves open the possibility that the handbook's language created an agreement as a matter of contract formation, but an agreement that could not be enforced consistent with public policy.

-14-

concurring opinion which stated, in its entirety,

> *I agree with* parts I, II, and VII of *the lead opinion that the handbook language at issue in this case did not create a valid agreement to arbitrate civil rights claims.* I express no opinion regarding whether or when an agreement to arbitrate [such claims] might be found enforceable.

*Heurtebise*, 550 N.W.2d 243, 258 (Mich. 1996) (J. Boyle concurring, joined by C.J. Brickley & JJ.

Riley & Weaver).[4]

**Heurtebise is fatal to RentWay's motion to compel arbitration as it relates to the**

**RentWay Employee Handbook and the Employee Handbook Acknowledgement,** because the

---

[4]

The three-member lead opinion went on to address an issue which we need not reach today:

Although a majority of this Court saves the public policy issue for another day . . . I believe that we should decide it as well.  Therefore, I turn now to the issue whether private employers can require employees, as a condition of employment to waive prospectively their right to pursue civil rights claims in a judicial forum.

\* \* \*

I would find that an aggrieved individual's access to a judicial forum to remedy violations of his nonnegotiable, constitutionally guarantee, and legislatively articulated civil rights, is also a nonnegotiable state right.  Accordingly, I would find that the people of Michigan and the Legislature intended to preclude prospective waivers of judicial remedies.

The defendant's *amici curiae* contend that both the FAA and the MAA apply and that the public policy favoring arbitration directs us to enforce a prospective arbitration agreement.  Even if either statute does apply, I would follow *Gilmer*'s lead and hold that the public policy favoring arbitration can be outweighed by contrary constitutional or legislative intent.  I have determined that in the instant case it is outweighed by the public policy expressed in the Michigan Constitution guaranteeing aggrieved individuals direct access to a judicial forum and by subsequent legislative intent.

*Heurtebise*, 550 N.W.2d at 247-28 and 257 (Cavanagh, J., joined by JJ.  Levin & Mallett) (n. 37 omitted).  The other four members of the Court declined to address whether or when an agreement to arbitrate civil-rights claims may be unenforceable as against public policy.  *Id.* at 258 (Boyle, J., concurring, joined by C.J. Brickley and JJ. Riley & Weaver).

language used in those documents is not materially different from the language the Michigan Supreme Court held *not* to form a valid arbitration agreement. As in *Heurtebise*, the RentWay Handbook and Acknowledgement both state unambiguously that neither document creates a contract. Again as in *Heurtebise*, the RentWay Employee Handbook and Employee Handbook Acknowledgement show RentWay announcing that it had no intention of being bound by, and did not consider itself bound by, the handbook or the policies, rules and procedures contained or referred to therein. Those two documents, then, whether considered singly or together, cannot have created a valid agreement to arbitrate under *Heurtebise*. *See, e.g., Ventura v. Oakwood Hosp. Corp.*, 1999 WL 334534001, *1 (Mich. App. Feb. 19, 1999) (p.c.) (P.J. Markman, Bandstra, Cir. J. Kowalski) ("We find that the general disclaimer of any creation of a contract in the hospital's employee handbook is virtually identical, in substance, to the disclaimer provision the Supreme Court relied on in *Heurtebise* to find that the handbook in that case had not created a[n] arbitration agreement. The disclaimer [her]e clearly indicates that the content of the handbook is not intended to create terms or conditions of either an expressed or implied employment contract, as did the disclaimers in *Heurtebise* and *Stewart* [*v. Fairlane Cmty. Mental Health Ctr.*, 571 N.W.2d 542 (Mich. App. 1997)]. Accordingly, the trial court erroneously ordered the parties to submit to arbitration.").

**RentWay, however, decisively distinguishes *Heurtebise*.** RentWay concedes that the language in its Guidebook and Guidebook Acknowledgement closely tracks the language in *Heurtebise*. Accordingly, RentWay does not deny that those two documents did not evince RentWay's intent to be bound, and thus did not create a valid agreement to arbitrate. RentWay notes, however, that it also issued a separate document, which did not contain the offending

-16-

language, which obligates Kettles to submit these claims to its "Solutions" ADR / arbitration program.    "[W]hereas the non-contractual handbook in *Heurtebise* contained the arbitration provision, 'Solutions' is a stand-alone agreement that explicitly states it is intended to be a binding contract between RentWay and its employees."  Def RentWay's Reply at 1.  That is, RentWay's "Solutions" document was not merely a general statement of what employees should expect, and it was not and is not subject to unilateral change.  Namely, the Solutions document states, "*This booklet creates a binding contract* between RentWay, its employees and its applicants for the use of Solutions to resolve workplace disputes."  Def RentWay's Reply Ex 4 Att A (or Def RentWay's MTD Ex 1 Tab A) at 2 (emphasis added).  Later, the Solutions document states,

> To be fair and to provide further consideration for your agreement to be bound by Solutions, *RentWay also agrees to be bound by Solutions. Thus, Solutions creates a binding contract* requiring RentWay, its employees and its job applicants to resolve all work-related conflicts through the procedures provided in Solutions . . . .

*Id.* at 8 (emphasis added).  Finally, the Solutions document cautions that

> *Solutions shall continue to be a binding contract after an employee's termination* from employment (whether the termination is voluntary or involuntary).   An employee's or job applicant's heirs, representatives, executors, and administrators and RentWay's successors and assigns *shall be legally bound by Solutions*.

*Id.* at 10 (emphasis added)**.**

**Accordingly, the court holds that Solutions was a valid arbitration contract,** evincing an intent to bind both parties as to all "workplace disputes" and "work-related conflicts" and *not* reserving any right for RentWay to unilaterally modify or abrogate the agreement to arbitrate.  *Cf. Hicks v. EPI Printers, Inc.*, 702 N.W.2d 883 (Mich. App. 2005) (p.c.) (P.J. Cavanagh, Jansen, Gage) (although employment manual reserved employer's right to modify it, it was a binding contract because it did *not* contain language indicating its terms were not intended to create an enforceable

agreement, it did not state that changes made without notice would be retroactive, and its severability clause reflected an understanding that terms would be enforced to the extent possible).

**Next, the court rejects Kettles's argument that, even if there were a valid arbitration agreement, defendant Rent-a-Center would not be entitled to enforce it.**  Kettles asserts that because Rent-a-Center did not acquire Rent-Way, Inc. until 2006, after the putative arbitration agreement was promulgated, it is, or at least *may* not be, Rent-Way, Inc.'s legal successor-in-interest for this purpose.  *See* P's Opp at 8.  But Kettles identifies no case law, let alone binding Michigan appellate decisions, holding that one corporation was not the successor-in-interest to an earlier corporation under circumstances identical or similar to these.  For that proposition, Kettles cites only *Howard Johnson Co., Inc. v. Detroit Local Jt. Exec. Bd., Hotel & Restaurant Emp. & Bartenders Int'l Union*, 417 U.S. 249 (1974) ("*HoJo*").  But *HoJo* did not apply Michigan law.  Rather, *HoJo* involved a claim under the Labor and Management Relations Act ("LMRA"), 29 U.S.C. § 185, *see* 417 U.S. at 252-53, and the Court made clear that it was fashioning "federal common law", *id.* at 255 (citing *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448 (1957)).  In fashioning that federal common law, the Supreme Court analyzed three of its own decisions – *Wiley & Sons v. Livingston*, 376 U.S. 543 (1964) and *NLRB v. Burns Int'l Security Servs.*, 406 U.S. 272 (1972)), and *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 182-83 n.5 (1973) – not any Michigan decisions.  *See HoJo*, 417 U.S. at 256-65.  Kettles does not identify any binding Michigan decisions which adopt *HoJo*'s statement of federal common law as Michigan's law on the issue of when a corporation must abide by its predecessor's agreement to arbitrate.[5]

---

[5]

 Our Circuit has applied the U.S. Supreme Court's *HoJo* decision to determine whether corporations were bound to adhere to their predecessors' agreement to arbitrate, but always as a matter of federal common law (usually relating to an NLRB or private action under LMRA or

On the contrary, in Michigan,

> [t]he traditional rule of successor liability examines the nature of the transaction between predecessor and successor corporations.  If the acquisition is accomplished by merger, with shares of stock serving as consideration, the successor generally assumes all of its predecessor's liabilities.  However, where the purchase is accomplished by an exchange of cash for assets, the successor is not liable for its predecessor's liabilities unless one of five narrow exceptions applies.  The five exceptions are as follows:
>
> > (1) where there is an express or implied assumption of liability; (2) where the transaction amounts to a consolidation or merger; (3) where the transaction was fraudulent; (4) where some of the elements of a purchase in good faith were lacking, or where the transfer was without consideration and the creditors of the transferor were not provided for; or (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation.

*RDM Holdings Ltd. v. Continental Plastics Co.*, 762 N.W.2d 529, 552 (Mich. App. 2008) (P.J. Murphy, Sawyer, Whitbeck) (quoting *Foster v. Cone-Blanchard Machine Co.*, 597 N.W.2d 506, 509-10 (Mich. 1999) (Weaver, C.J., joined by Taylor, Corrigan & Young, JJ.)).  For this purpose, a *prima facie* case of continuity of the enterprise exists, so as to bind the successor to the predecessor's obligations and benefits, when

> (1) there is continuation of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations of the predecessor corporation; (2) the predecessor corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and (3) the purchasing corporation assumes those liabilities and obligations

---

ERISA in the context of a collective bargaining agreement).  The Sixth Circuit's panels have not suggested that the Michigan courts have adopted or approved *HoJo*, nor predicted that the Michigan Supreme Court would be likely to do so.  *See, e.g.,*

> *Cobb v. Contract Transport, Inc.*, 452 F.3d 543 (6th Cir. 2006);
> *Southward v. So. Central Ready Mix Supply Corp.*, 7 F.3d 487 (6th Cir. 1993);
> *Local No. 47, SEIU v. Commercial Prop. Servs., Inc.*, 755 F.2d 499 (6th Cir. 1985);
> *NLRB v. Crossroads Elec., Inc.*, 178 F. App'x 528 (6th Cir. 2006) (Cole, <u>Gibbons</u>, Rogers);
> *Yolton v. Tenn. El Paso Pipeline Co.*, 435 F.3d 571 (6th Cir. 2006);

of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the selling corporation. [A]n additional principle relevant to determining successor liability [is] whether the purchasing corporation holds itself out to the world as the effective continuation of the seller corporation.

*RDM Holdings*, 762 N.W.2d at 552 (quoting *Foster*, 597 N.W.2d at 510 (discussing *Turner v. Bituminous Cas. Co.*, 244 N.W.2d 873, 883-84 (Mich. 1976))).

Kettles has not contested the defendants' statements that Rent-a-Center acquired RentWay's Kalamazoo store by way of a merger and that post-merger there was a continuity of business operations at that location. The defendants present an undisputed sworn statement that Rent-a-Center kept all of RentWay's workforce, each employee continued performing the same duties, all management-level employees stayed in their positions including defendants Hutchinson and Wagner, and the Kalamazoo store continued with the same purpose (rent-to-own services for individuals). *See* Def RentWay's Reply Ex 4 - Declaration of Rent-a-Center's Sr. Dir. of Compensation & Benefits & Custodian of Records Steven A. Spratt, dated May 5, 2009 ("2d Spratt Aff") ¶¶ 4 and 7.

Perhaps most significantly, even apart from the continuity-of-enterprise test set forth above, the Solutions document expressly defined RentWay to "includes Rent-Way, Inc., its present and future parents, subsidiaries, affiliates, successors and assigns, and their directors and executive officers." Defs' Reply Ex A at 2. Accordingly, under *Foster v. Cone-Blanchard Machine Co.*, 597 N.W.2d 506 (Mich. 1999) and *Turner v. Bituminous Cas. Co.*, 244 N.W.2d 873 (Mich. 1976), and under the plain language of the Solutions document itself, the court determines that Rent-a-Center, Inc. is the successor-in-interest to Rent-Way, Inc., and is entitled to the benefits of, and bound by the obligations accruing to the former under the Solutions document. In other words, RentWay may assert its predecessor's right to require Kettles to arbitrate his claims instead of litigate them.

Kettles also attempts to place significance on the fact that he has sued individual defendants **Hutchinson** and **Wagner "in their personal capacity",** reasoning that "the arbitration provision in question does not indicate that it applies to the individual defendants in their personal capacity."   P's Opp at 8.   But Kettles presents *no* case law, let alone binding Michigan appellate decisions, suggesting that a mandatory-arbitration agreement does not apply to an employee's claims against parties other than the employing corporation itself.   The Solutions document contains no such limitation, and this court cannot read terms into a contract which are simply not there.   Moreover, as RentWay points out, if that were the rule, every employee could flout his agreement to arbitrate work-related disputes by naming his supervisor or some other individual employee who was involved in the alleged unlawful discrimination, retaliation or interference in question.

**Next,** the court readily finds that the claims asserted in Kettles's complaint fall within the scope of the broadly worded "Solutions" arbitration agreement, i.e., they are mandatorily arbitrable.[6]

---

[6]

In any event, Kettles has provided no developed argumentation or reasoning to support its suggestion that Rent-a-Center is not the successor-in-interest to Rent-Way, Inc.   It is insufficient for Kettles merely to assert an abstract legal principle but do nothing to explain how that principle applies to our facts.   This is Kettles' entire "argument" on the issue:   "[I]t is well recognized that not every merger or acquisition necessarily creates a 'successor' for purposes of enforcing an arbitration agreement."   P's Opp at 8.   "'It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving a court to . . . put flesh on its bones.'" *Loucks v. Fieldstone Mortg. Co.*, 2007 WL 2814866, *1 (W.D. Mich. Sept. 25, 2007) (Maloney, J.) (quoting *Meridia Prods. Liab. Lit. v. Abbott Labs.*, 447 F.3d 861, 868 (6th Cir. 2006) (citation omitted)).

The court finds that Kettles has abandoned this argument by failing to develop it with any discussion of facts or citation of Michigan authority.   *See Garcia v. Daimler Chrysler Corp.*, – F. App'x –, –, 2009 WL 928576, *6 (6th Cir. 2009) (Keith, Sutton, <u>Griffin</u>) ("'[I]t is a settled . . . rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *US v. Villareal*, 491 F.3d 605, 611 (6th Cir. 2007)).

*See, e.g., Kelley v. McCafferty*, 283 F. App'x 359, 363 (6th Cir. 2008) (Martin, <u>Griffin</u>, 8th Cir. J. John Gibson) ("[P]laintiffs argue first that the . . . warrant was unlawful because it was not supported by probable cause. * * * Plaintiffs, however, fail to cite any authority in support of this

-21-

Solutions defines a "legal dispute" subject to the arbitration requirement as

> a conflict between RentWay and an employee or job applicant that relates directly or indirectly to the employee's or job applicant's hiring, non-hiring, employment or termination of employment.  This includes : (1) any dispute where an employee or job applicant seeks to hold RentWay liable, require RentWay to take any action or prohibit RentWay from taking any action on account of the acts or omissions of RentWay, any RentWay employee, or any third person; (2) any dispute where RentWay seeks to hold an employee or job applicant liable . . . ; and (3) any dispute where RentWay, an employee or job applicant seeks a declaration of . . . legal rights against the other.  * * *

Def RentWay's Reply Ex 4 at 8-9.  The Solutions document goes on to specify that

> "Legal disputes" subject to Solutions include disputes or claims under any federal, state or local constitution, statute, ordinance, rule, regulation, or common law doctrine. *This includes all laws concerning or relating to employment discrimination* or harassment, terms or conditions of employment, employment compensation, bonuses or working conditions, benefits . . . , *or termination of employment. Specifically, this includes, but is not limited to, disputes or claims pursuant to:  the Civil Rights Acts of 1866, 1964, and 1991, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family Medical Leave Act, the [FLSA] and the [ERISA]; whistleblower or retaliation statutes or common law theories; state and local human rights or non-discrimination laws . . . and tort or breach of contract common law theories.* * * *

 Def RentWay's Reply Ex 4 at 9.  *Cf., e.g., Panepucci v. Honigman, Miller, Schwartz & Cohn, LLP*, 281 F. App'x 482 (6th Cir. 2008) (C.J. Boggs, Martin, Siler) (determining that the discrimination and retaliation claims of the plaintiff (a partner at defendant law firm) were covered by a clause requiring partners to arbitrate any claims "arising under or related to" the  partnership agreement).

Finally, Kettles has not identified any precedential case law holding that federal or Michigan public policy bars enforcement of a valid arbitration agreement in these circumstances.

---

conclusory assertion.  Indeed, Plaintiffs' only support for the above premise is an approximately one-page recitation of the definition of probable cause, and the supposition that the determination of probable cause is a jury question.  Such meager support cannot alone sustain plaintiffs' claims. * * * We therefore conclude that plaintiffs have abandoned this issue.") (citing *Villareal* (citing *US v. Johnson*, 430 F.3d 383, 397 (6th Cir. 2005)));

In short, under Michigan law, RentWay has established that Kettles entered into a mandatory binding-arbitration agreement (the "Solutions" document); RentWay, as successor-in-interest to the corporate signatory to the Solutions document, is entitled to enforce that arbitration agreement, including the claims against its other employees (Hutchinson and Wagner); Kettles' claims clearly fall within the scope of the arbitration requirement; and there is no readily discernible "public policy" basis for refusing to enforce the arbitration requirement here.

## ORDER

Defendants' motion to compel arbitration and to dismiss [doc. #6] is **GRANTED**.

The complaint is **DISMISSED**.

The plaintiff **MAY** submit these claims to defendant RentWay's "Solutions" program, which includes mandatory binding arbitration.[7]

---

[7]

The Solutions document describes the arbitration demand and subsequent procedure as follows, in pertinent part:

A request for arbitration may be delivered either before or after the initiation of a lawsuit. The request must set forth the legal dispute, including the alleged act(s) or omission(s) that give rise to the dispute; the name, address and telephone number of this initiating employee; and the names of all persons allegedly involved in the act(s) or omission(s). The request must pertain only to RentWay and a single employee (since class actions and other multiple-party claims are not allowed).

If you request arbitration, your request must identify the arbitration administrator ("Administrator") you desire. * * * The Administrator must be either the American Arbitration Association ("AAA"), 1-800-7879, www.adr.org, or the National Arbitration Forum ("NAF"), 1-800-474-2371, www.arb-forum.com, provided that no arbitration may be administered by any organization that has in place a formal or informal policy that is inconsistent with and purports to override the terms of Solutions. If neither AAA nor NAF is able or willing to serve as Administrator, you and RentWay will select an Administrator by agreement or a court will select the Administrator.

The plaintiff **MAY NOT** litigate these claims in any court.

This is a final and immediately appealable order.  *Green Tree Fin. Corp.-Ala.v. Randolph*, 531 U.S. 79 (2000) (Rehnquist, C.J., for a unanimous Court on this issue) ("[W]here . . . the District Court has ordered the parties to proceed to arbitration, and dismissed all the claims before it, that decision is 'final' within the meaning of [9 U.S.C.] § 16(a)(3), and therefore appealable.").

**IT IS SO ORDERED** on this <u>18th</u> day of May 2009.

---

Your written request for arbitration must be sent, by certified mail or hand-delivery, to . . . .  RentWay will initiate the arbitration process within 30 days of receiving your request . . . .

<u>Arbitration Fees and Location</u>
If you request arbitration, you will be responsible for the fees of the Administrator and arbitrator, to the extent permitted by law, up to a maximum of $100 less any fees you may have paid in connection with the mediation of the legal dispute.  However, RentWay will consider your reasonable request to waive your portion of any arbitration costs and will not ask you to pay any portion of such costs if prohibited by applicable law.  RentWay will pay all other fees charged by the Administrator or the arbitrator. [*See generally Stutler v. T.K. Constructors, Inc.*, 448 F.3d 343 (6th Cir. 2006) (Batchelder, J., joined by Siler, J.) (explaining that when employee asserts federal statutory civil-rights claims, he may be able to argue that federal public policy precludes enforcement of contractual arbitration clause which places prohibitive costs on the employee).]  * * *  Although you are not required to hire a lawyer for arbitration, you may have one if you choose.  The parties will bear the fees and costs of their own counsel, experts and representatives, except to the extent applicable law provides otherwise.

All in-person proceedings shall occur at a location reasonably convenient to where you reside.
                              * * *
The arbitrator may award any remedies available in an individual judicial proceeding (but not any other remedies).  Upon any party's request, the arbitrator shall provide a written explanation for the award.  The arbitrator's award may be appealed to court as set forth in the FAA.  The arbitrator's award may be enforced by any court having jurisdiction.

Defs' Reply Ex 4 at 6-8.

/s/ Paul L. Maloney
Hon. Paul L. Maloney
Chief United States District Judge